UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JEREMY MILLER                                                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:23-CV-3041-KHJ-MTP

JOSHUA HARTFIELD, et al.                                                                       DEFENDANTS

ORDER

Before the Court is Defendants Trey Walker and the Richland Police Department's (RPD) [11] Motion to Dismiss. The Court grants the motion.[1]

I. Background

This case arises from alleged police brutality in Rankin County.

Plaintiff Jeremy Miller was refueling his compact car on October 26, 2020. *See* Am. Compl. [2] ¶ 7. He saw an acquaintance, Tony Ross, refueling his motorcycle. *See id.* ¶¶ 7, 9. Ross asked Miller for help transporting his girlfriend's possessions from Walmart. *Id.* ¶ 8. Miller agreed to help. *Id.*

After dropping off the items, Miller and Ross rode separately down Old Highway 49. *Id.* ¶ 9. "Ross shouted to Miller that shots were being fired." *Id.* ¶ 10. "Concerned for their safety, Ross directed Miller to accelerate and overtake any encountered vehicles to avoid potential danger." *Id.* Miller, who also heard what sounded like gunfire, accelerated. *Id.* ¶¶ 10–11.

---

[1] The Court thus finds as moot their alternative [13] Motion for Summary Judgment.

Miller then noticed blue lights behind him. *Id.* ¶ 11. At first, Miller slowed down. *See id.* ¶¶ 11–12. But then he remembered Ross' warning about the gunshots. *Id.* ¶ 12. Miller was "worried that the individual in the car with the blue lights was the shooter," in part because of Ross' prior run-ins with police. *Id.* Miller also grew concerned that he may have just helped move stolen property. *Id.* "In a state of panic and fearing for his life," Miller sped away. *Id.* ¶ 13. He lost the police and eventually stopped in a neighborhood. *See id.* He then asked friends for advice; they told Miller to turn himself in. *Id.* Miller called the police and disclosed his location. *Id.*

When officers arrived, "Miller walked toward them to surrender." *Id.* ¶ 14. Miller alleges that officers repeatedly punched, kicked, and tased him—and put a gun to his head—while he was "subdued, compliant, and not resisting." *See id.* ¶¶ 14, 25–27, 32–35. The alleged police brutality resulted in bruises, burns, and severe emotional distress. *See id.* ¶¶ 15, 17, 23, 29, 36, 45, 53, 60.

Miller filed this lawsuit on October 26, 2023—three years after the alleged events. Compl. [1]. In his original Complaint, he sued one former RPD officer, Joshua Hartfield, in his individual and official capacities. *Id.* ¶ 3.[2] He also sued ten "John Does," who were "as yet unknown and unidentified." *Id.* ¶ 4. The original

---

[2] When Miller sued, Hartfield was detained for his involvement in the torture of two Black men in Rankin County. *See, e.g.*, Waiver of Detention Hearing [37], *United States v. Hartfield*, No. 3:23-CR-62-6 (Aug. 3, 2023). Hartfield has since been sentenced to ten years of imprisonment for conspiracy against rights, deprivation of rights under color of law, conspiracy to obstruct justice, and obstruction of justice. *See, e.g.*, Plea Agreement [62] at 1, *Hartfield*, No. 3:23-CR-62-6; Judgment [144] at 3, *Hartfield*, No. 3:23-CR-62-6.

The Circuit Court of Rankin County sentenced Miller to 11 years of imprisonment for felony evasion. *See* Order of Sentence, *State v. Miller*, No. 31832 (Nov. 29, 2021).

Complaint included four counts: three for excessive force and one for failure to intervene. *Id.* ¶¶ 16–43. Notably, Miller alleged that "Defendants' actions [were] pursuant to a purposeful ongoing, concerted policy, practice, or custom." *Id.* ¶ 41.[3]

Before serving the original Complaint on any Defendant, Miller filed an Amended Complaint on January 3, 2024. [2]. The Amended Complaint added Defendants the RPD and Trey Walker, in his individual and official capacities, "as John Does 1 and 2." *Id.* at 1. The Amended Complaint also added a fifth count: a *Monell* claim. *Id.* ¶¶ 46–54. Miller purportedly served the RPD and Walker through the RPD's Chief of Police, Nick McClendon. *See* [6]; [7]. After an extension of time, Miller also served Hartfield. *See* Order [9]; [17].

The RPD and Walker, in his individual and official capacities, moved to dismiss under Rules 12(b)(5) and 12(b)(6). [11]. They raised various arguments, "including that Miller has sued the wrong parties, did not properly serve the defendants, has asserted time barred claims, or, alternatively, [that] his claims fail on the merits." *See id.* at 1. After a missed deadline and two extensions of time, Miller filed his response. *See* Text Order 2/12/2024; Text Order 2/16/2024; Text Order 2/27/2024; Resp. [20]. Miller alternatively styled his response as a "Motion to Amend to Name Proper Defendant," seeking to name "the proper Defendant City of Richland in place of the Richland Police Department." [20] at 1.

---

[3] Defendants' representation that this allegation could not "possibly be construed as asserting any sort of municipal liability" is not well taken. *See* Defs.' Mem. [12] at 9.

II.   Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Watkins v. Allstate Prop. & Cas. Ins. Co.*, 90 F.4th 814, 817 (5th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). The Court "accepts all well-pleaded facts as true" but "does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (cleaned up).

III.   Analysis

The Court dismisses with prejudice all claims against the RPD, which is a non-suable entity. It dismisses with prejudice all claims against Walker in his individual capacity; those claims are time-barred. It dismisses without prejudice Miller's *Monell* claim, which fails to satisfy the Rule 12(b)(6) pleading standard. And finally, it denies Miller's request for leave to amend, which is both procedurally improper and futile.

   A.   The RPD

The Court dismisses with prejudice all claims against the RPD, which is not a suable entity. "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence" under state law. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quotation omitted). "In Mississippi, a police department is not a separate legal entity which may be sued." *McDonald v. City of Meridian Police*

4

*Dep't*, No. 3:20-CV-534, 2020 WL 7205423, at *2 (S.D. Miss. Dec. 7, 2020). Miller correctly concedes that "a police department . . . is not the proper[] party for suit." [21] at 5. The Court thus dismisses with prejudice all claims against the RPD.

  B. Walker in Individual Capacity

The Court also dismisses with prejudice all claims against Walker in his individual capacity. All such claims are time-barred.

"A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014). The Amended Complaint shows that Miller's causes of action against Walker accrued on October 26, 2020. [2] ¶¶ 7–17, 19, 21, 25, 31; *see also* [21] at 3. The parties agree that the original Complaint was—and the Amended Complaint was not—filed within the three-year statute of limitations for Section 1983 claims. *See* [1]; [2]; [12] at 6–7; *Cuvillier v. Taylor*, 503 F.3d 397, 401–02 (5th Cir. 2007). So the timeliness of Miller's claims against Walker in his individual capacity turns on whether the Amended Complaint relates back under Federal Rule of Civil Procedure 15(c)(1).

It does not. Under Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading" under only three circumstances:

    (A) the law that provides the applicable statute of limitations allows relation back;
    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>   (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>   (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). None of those three circumstances applies here. The Court addresses each in turn.

First, Mississippi law does not allow relation back here, so Rule 15(c)(1)(A) is inapplicable. *See, e.g.*, *Turnage v. McConnell Techs.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam). To be sure, Mississippi Rules of Civil Procedure 9(h) and 15(c) create a limited relation-back privilege for named parties who are substituted for fictitious parties. Those rules could be relevant to Walker's substitution for John Doe. *See* [2] at 1. But to invoke those rules, a plaintiff must "actually exercise a reasonably diligent inquiry into the identity of the fictitious party." *Doe v. Miss. Blood Servs., Inc.*, 704 So. 2d 1016, 1019 (Miss. 1997). "The trial court's review of whether the plaintiff exercised a reasonably diligent inquiry is to be strict." *Id.* Miller offers no evidence or argument that he undertook a reasonably diligent inquiry into Walker's identity. *See* [2]; [21] at 3–4 (Miller stating, without elaboration, that "[h]ere the law allows relation back"). Rule 15(c)(1)(A) does not apply.

Second, Rule 15(c)(1)(B) is inapplicable because the Amended Complaint added new parties. *See, e.g.*, *Ortiz v. Singer*, No. 16-3708, 2017 WL 2505674, at *2 (S.D. Tex. June 9, 2017).

And third, Rule 15(c)(1)(C) is inapplicable because there was no "mistake" about Walker's identity. When a plaintiff has sued "a 'John Doe' defendant, there was no 'mistake' in identifying the correct defendant; rather, the problem was not being able to identify that defendant." *Jacobsen v. Osborne*, 133 F.3d 315, 320–21 (5th Cir. 1998). Miller's original Complaint admitted that Walker was "unknown and unidentified." *See* [1] ¶ 4. Rule 15(c)(1)(C) is inapplicable, too.

In sum, the pleadings show that Miller's claims against Walker in his individual capacity are time-barred. *See Taylor*, 744 F.3d at 946. The Court thus dismisses those claims with prejudice.

C. *Monell*

The Court turns to Miller's official-capacity claim. "[O]fficial capacity suits are really suits against the governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009); *see also Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quotation omitted).

The Court dismisses Miller's *Monell* claim without prejudice.[4] To state a *Monell* claim, a plaintiff "must plead facts that plausibly establish '(1) an

---

[4] For now, the Court assumes without deciding that Miller's *Monell* claim relates back. Defendants' memorandum notes that "the original complaint named Jo[sh]ua

7

official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *See St. Maron Props., LLC v. City of Hous.*, 78 F.4th 754, 760 (5th Cir. 2023) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)). Miller's boilerplate allegations do not plausibly establish either an official policy or a final policymaker.

1. Official Policy

Miller has not plausibly alleged an official policy. "To proceed beyond the pleading stage, a complaint's description of a policy or custom . . . cannot be conclusory; it must contain specific facts." *Peña*, 879 F.3d at 622 (cleaned up). Miller alternatively alleges that the RPD (1) had a "de facto policy or custom of permitting officers to use excessive force," (2) failed to "proper[ly]" train its officers, and (3) failed to "properly" supervise its officers. *See* [2] ¶¶ 46–54. But all three theories lack specific factual allegations.

---

Hartfield in both his individual and official capacities, and often official-capacity suits are said to be tantamount to suits against the governmental entity itself." [12] at 7. The Amended Complaint, too, names Hartfield in his official capacity. [2] at 1. Yet Defendants do not address whether the *Monell* claim—which Miller at least arguably "attempted to . . . set out . . . in the original pleading"—could relate back under Rule 15(c)(1)(B). *Compare* [1] ¶ 41 ("Defendants' actions [were] pursuant to a purposeful ongoing, concerted policy, practice, or custom undertaken with the intent to violate the Plaintiff's constitutional rights."), *with* [2] ¶¶ 46–54 (asserting *Monell* claim as a separate count).

    As to the official-capacity claim against Walker, Defendants concede that the City received notice within the Rule 4(m) period. *See* [23] at 3. They instead argue that "Miller tactically chose to sue only an individual." *Id.* at 4. But saying so does not make it so. Defendants offer no explanation as to why Miller would "tactically" assert only an individual-capacity claim against Hartfield, who was incarcerated and is likely judgment-proof. *See, e.g.*, *id.* at 4–5 (noting that "it was public knowledge that Hartfield was . . . in jail awaiting sentencing at the time of the filing of the original complaint"); Judgment [144] at 3, 7, *Hartfield*, No. 3:23-CR-62-6 (sentencing Hartfield to ten years of imprisonment and ordering him to pay $79,500 in restitution). That strikes the Court as an unlikely way to— in Defendants' words, [23] at 4—"capitalize" on alleged police brutality.

First, Miller asserts "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *St. Maron Props.*, 78 F.4th at 760. "But plausibly to plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622 (cleaned up). While Miller alleges a custom of "using excessive force and failing to intervene," [2] ¶ 48, "this allegation does not contain any specific facts." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020). "Instead, the [Amended Complaint's] only specific facts appear in the section laying out the events that gave rise to this action." *Id.* The Amended Complaint, then, "clearly does not satisfy *Twombly* or *Iqbal*." *Id.*

Next, Miller asserts a failure-to-train theory, alleging that the RPD's training was not "proper." [2] ¶ 52. To prevail on a failure-to-train theory, Miller must "plead facts plausibly establishing (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff*, 948 F.3d at 285 (quotation omitted). But the Amended Complaint includes no information about the RPD's training procedures, no information about a "pattern of similar constitutional violations by untrained employees," and no "specific allegations supporting a plausible causation inference." *See id.*; *Peña*, 879 F.3d at 623 (quotation omitted); [2] ¶¶ 46–54. Miller's conclusory failure-to-train allegation fails.

Finally, Miller alleges that the RPD failed to "properly" supervise its officers. [2] ¶ 50. "[A] failure-to-supervise claim is evaluated in the same way as a failure-to-train claim." *Trammell v. Fruge*, 868 F.3d 332, 344 n.11 (5th Cir. 2017); *see also, e.g.*, *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023) (per curiam) (reciting same elements and noting that "threshold for pleading a failure-to-supervise claim is high"). Miller's failure-to-supervise theory thus fails for the same reasons.

In short, Miller has not plausibly alleged an official policy, so his *Monell* claim fails.

2. Policymaker

Even if Miller had plausibly alleged an official policy, he would fail to state a *Monell* claim for a second reason. Miller does not connect that official policy to a municipal policymaker.[5]

Because "the identity of the policymaker is a question of law[,] a plaintiff is not required to single out the specific policymaker in his complaint." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023) (quoting *Groden v. City of*

---

[5] "Official-capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023). The Court doubts that either Hartfield or Walker—who appear to be former and present rank-and-file officers, *see* [21] at 3—was a policymaker. But the parties' briefing offers little argument on that score. *See* [12] at 19 (asserting that board of aldermen was the final policymaker based on statute codifying municipalities' general police powers). *But see, e.g., K.B. v. Adams*, 480 F. Supp. 3d 746, 755–56 (S.D. Miss. 2020) (finding, at summary-judgment stage, that city's chief of police was final policymaker as to alleged policy of excessive force). And the Amended Complaint itself does not specify either Hartfield's or Walker's role within the RPD. *See* [2] ¶¶ 3–4. For now, then, the Court assumes without deciding that Miller can maintain an official-capacity suit against either Hartfield or Walker. In any event, Miller fails to state a *Monell* claim.

*Dall.*, 826 F.3d 280, 282 (5th Cir. 2016)). The "plaintiff need only plead *facts* that show that the . . . official policy . . . was promulgated or ratified by the legally authorized policymaker." *Id.* (quoting same); *see also Groden*, 826 F.3d at 286 (finding that plaintiff connected policy to city council through factual allegations that city "publicly announced" the policy and that city's spokesperson "gave media interviews describing the new policy").

In this case, "the specific identi[t]y of the policymaker is neither here nor there, given [Miller's] utter failure to allege facts connecting [an alleged policy] to any particular policymaker." *See Peña*, 879 F.3d at 622–23 & n.15. Miller alleges only that "[h]igh ranking officials within the Richland Police Department were aware of or recklessly disregarded the offensive conduct of their officers." *See* [2] ¶ 48. That generic allegation—that an unspecified number of unnamed high-ranking officials knew about "or" disregarded unidentified instances of excessive force and failure to intervene—does not connect a policy to any policymaker. For that reason, too, Miller's *Monell* claim fails.

D. Leave to Amend

Miller alternatively styled his response as a "motion to amend to name proper defendant," substituting the City of Richland for the RPD. *See* [20] at 1. The Court denies that request for two reasons. First, it violates the Local Rules.[6] And second, even if Miller had filed a procedurally proper motion for leave to amend, the

---

[6] *See* L.U. Civ. R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response."); L.U. Civ. R. 15 ("If leave of court is required under Fed. R. Civ. P. 15, a proposed amended pleading must be an exhibit to a motion for leave to file the pleading.").

11

Court would deny it as futile. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). Miller's proposed second amended complaint—which would only change a Defendant's name—would fail to state a *Monell* claim for the reasons discussed above. *See supra* Section III.C.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendants Trey Walker and the Richland Police Department's [11] Motion to Dismiss; the Court FINDS AS MOOT their alternative [13] Motion for Summary Judgment. The Court dismisses with prejudice all claims against the Richland Police Department and Walker in his individual capacity. The Court dismisses without prejudice Miller's *Monell* claim.

SO ORDERED, this 30th day of April, 2024.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE